### PERKINS et al. v. HUNTINGTON.

(*Supreme Court, General Term, First Department.* May 13, 1892.)

PRINCIPAL AND AGENT—UNDISCLOSED PRINCIPAL—EVIDENCE.

The fact that one of the creditors of a corporation, after it became insolvent, furnished it means with which to carry on its business, does not, in an action against him by one who furnished material directly to the corporation, warrant a finding that he was the undisclosed principal of the corporation, and as such liable for the price of the materials.

Appeal from special term, New York county.

Action by George F. Perkins and others against Collis P. Huntington. From a judgment dismissing the complaint, plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN and ANDREWS, JJ.

*Charles D. Ridgway,* (*Joseph H. Choate,* of counsel,) for appellants. *Charles H. Tweed,* (*Frederick R. Coudert,* of counsel,) for respondent.

O'BRIEN, J. The action was brought to charge the respondent with the balance of the purchase price of certain paper sold and delivered by the appellants to the Star Printing Company, upon the ground that the paper was ordered by the company as the agent of the respondent, and for the use and benefit and on behalf of the respondent, who was the undisclosed principal and the actual purchaser of the paper; and, further, that during all the time the paper was furnished the newspaper theretofore printed and published was printed and published by the company at the request and upon the order and for the use and benefit of the respondent, such paper being so used in printing and publishing the newspaper, with respondent's knowledge and consent, and by his directions. As there was no testimony offered by the respondent, the dismissal having been made upon the close of plaintiff's case, the question to be considered upon this appeal is whether, upon any inference that may be drawn from the testimony adduced by a jury, liability upon any of the grounds suggested can be predicated.

It appears that the Star Printing Company was a domestic corporation, organized in 1886, its business being the publication of the newspaper called "The New York Star," of which William Dorsheimer became the editor, in addition to being the president of the company, and he so continued until his death in 1888. Upon the happening of this event, by reason of the loss entailed by the printing of the paper, the company was insolvent, and so known to be by the respondent, to whom alone it owed $660,000, or more than double the amount of the whole capital stock of the company. Upon the death of Mr. Dorsheimer, the management of the paper was assumed by the two surviving trustees, one of whom applied to the respondent for money with which to carry on the paper. The latter being absent, his agent, to whom the application was made, advanced moneys with which to continue the publication of the paper until the return of the respondent, some five or six weeks after the interview between his agent and one of the trustees, when application for additional moneys was made to him personally. Some testimony was also adduced to show that the respondent objected to a change in the size of the paper which was suggested by the trustee; and this, together with an expression of the respondent, communicated to the trustee, that they should keep the paper going in the hope of obtaining a purchaser, are the main facts relied upon to establish that the actual ownership, direction, and control were in the respondent. The appellants obtained for their claim judgments, and this action was brought subsequent to a failure to

realize the entire amount due thereon; the reason assigned for the failure to elect to sue the respondent originally being that the facts stated in the complaint were not, at the time when their actions were brought against the Star Company, known to the appellants. Upon this question of election we think the evidence is far from satisfactory as tending to establish appellant's contention that the facts upon which the respondent's liability is placed were not known prior to the recovery of judgments against the company, for upon the trial but one of the partners was interrogated or gave any evidence in respect to what knowledge the appellants had as to the respondent's connection with the publication of the Star newspaper. Assuming, however, that the recovery of the judgments is no bar to this action, we are of opinion that the disposition made by the learned trial judge was proper.

The main ground relied upon for a recovery was that the respondent was an undisclosed principal. To constitute this relation in respect to a creditor, certain elements must be present, and these are to be gathered from the principles relating to principal and agent. To constitute one a principal with respect to the acts of another in purchasing, he must in fact be the purchaser, and primarily interested; and the person so purchasing must be employed by him to act for him and for his benefit, and such person must have received authority to bind him. The testimony shows that the Star Printing Company, which was regularly organized, was openly doing business in its own name, and its purchases were made upon its own credit. The respondent had no knowledge of the purchases made at the time that they were made, nor of the existence of the persons from whom they were made, and had no voice in the selection of the vendor of the goods. While evidence was presented to show that the statement of the condition of the company from time to time was furnished to the respondent, which disclosed its condition and the extent of its liability, we do not think that there is anything in the evidence to prove that he knew anything of the details, or had anything to do with the management of the paper. The evidence required to displace the ostensible principal should be sufficient to justify an inference that the one sought to be substituted had assumed the control and management of the business, and put himself in a position to be responsible for the expenses of carrying the same on. We do not think that the facts adduced would justify the inference that the respondent was the principal; that the purchases were made for his account, and for his benefit, and by his direction, by his alleged agent, the Star Company. On the contrary, we think that the only logical inference to be drawn from the testimony adduced was that the respondent was not such principal. All that he did was to continue what he had formerly done, namely, to advance moneys to the company, with the hope, undoubtedly, of eventually putting it upon a paying basis, or selling it to some purchaser; in either of which events a resulting benefit would have flown to creditors, among whom would be the respondent himself. We think it would be, upon the facts here disclosed, a harsh rule of law to hold that one who, though he may have known of the insolvency of a corporation, in the hope of some benefit finally resulting to him, in common with the other creditors, should advance money from time to time with a view to averting the destruction of its business, would thereby render himself responsible for all the debts and liabilities of the concern to which such assistance had been rendered. Upon an examination of the testimony, therefore, we have reached the conclusion, as already stated, that the proof was not sufficient to justify an inference that the respondent was an undisclosed principal of the Star Company, and that the disposition made by the learned trial judge in dismissing the complaint was right, and that the judgment should be affirmed, with costs.

All concur.